IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ADRIENNE LEE, et al.,

    Plaintiffs,

      v.

AFTON LEE
Trustee of The Paul R. Jones, Jr.
Trustee [sic] and individually, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:16-CV-419-TWT

## OPINION AND ORDER

This is an action to quiet title and for a declaratory judgment. It is before the

Court on the Defendant Visio Financial Services, Inc.'s Motion to Dismiss [Doc. 19].

For the reasons set forth below, the Defendant Visio's Motion to Dismiss [Doc. 19]

is GRANTED in part and DENIED in part.

### I. Background

On February 6, 2012, Paul Raymond Jones, Jr. executed an inter vivos trust (the

"Trust"), naming the Defendant Afton Lee as successor trustee.[1] The Trust was

executed in California, and designated California law as the governing law for issues

_____

     [1]      Pls.' Corrected Amended Compl., Ex. C.

of validity.[2] Among other things, the Trust specifically bequeathed certain properties, including 1331 Cascade Falls Drive, Atlanta, Georgia (the "Property"), upon his death.[3] Regarding the Property, the Trust named the Plaintiff Ari Lee as the primary beneficiary, and the Defendant Afton Lee as the secondary beneficiary. The Plaintiff Adrienne Lee was named as the Trust's residual beneficiary.[4] Adrienne Lee is the mother of Ari Lee. They have been living in the home since 2012.[5]

On June 23, 2014, the Defendant Afton Lee purchased the Property on behalf of the Trust from the Community Foundation for Greater Atlanta, Inc. (the "Foundation") in its role as Administrator of another estate.[6] The total purchase price for the Property was $291,755.20.[7] As part of the purchase, a Limited Warranty Deed (the "Vesting Deed") was executed between the Foundation and the Trust.[8] The Vesting Deed, however, listed the Trust as the Grantee, not the Trustee.[9]

---

[2]   Id.

[3]   Id.

[4]   Id.

[5]   Pls.' Corrected Amended Compl. ¶¶ 14-15.

[6]   Id. at ¶¶ 10-11.

[7]   Pls.' Corrected Amended Compl., Ex. A.

[8]   Pls.' Corrected Amended Compl. ¶¶ 10-11.

[9]   Id.

On June 11, 2015, the Defendant Lee conducted a number of transactions with regard to the Property. The Defendant Lee attempted to correct the Vesting Deed by executing a deed (the "Correction Deed") between himself and himself.[10] The Foundation never signed this deed.[11] The Defendant Lee also executed a quitclaim deed (the "Quitclaim Deed") transferring the Property to the Defendant UltraCarz International, Inc.[12] The Defendant Lee is in sole control of the Defendant UltraCarz; he serves as its President, Secretary, and Treasurer.[13] In exchange for the transfer of the Property, the Trust received nothing of value.[14] No transfer tax was assessed on the Property,[15] and state tax forms associated with the Quitclaim Deed described the transaction as a "deed of gift."[16]

On the same day, the Defendant Lee then signed a promissory note (the "Note") in his capacity as President of the Defendant UltraCarz to obtain a loan for $99,110.00

---

[10]   Id. at ¶¶ 22-23.

[11]   Id. at ¶ 24.

[12]   Id. at ¶ 16.

[13]   Id. at ¶ 17.

[14]   Id. at ¶ 19.

[15]   Id.

[16]   Id. at ¶ 20.

from the Defendant Visio.[17] The Note was a six-month interest-only loan, with an interest rate of fifteen percent and a maturity date of January 1, 2016.[18] Along with the promissory note, the Defendant UltraCarz entered into a Security Deed with the Defendant Visio, naming the Defendant Visio as the secured party and the Property as the security.[19]

The Plaintiffs allege that the Defendant Visio was aware of a number of things that should have put it on notice that something was wrong with the Defendant UltraCarz' title. First, the Plaintiffs allege that the Defendant Visio was aware that the Defendant Lee was both the Trustee of the Trust and also the President of the Defendant UltraCarz.[20] The Plaintiffs also allege that the Defendant Visio was aware that the Defendant UltraCarz was unable to obtain funding through normal channels, because it agreed to an interest rate of fifteen percent.[21] And that the Defendant Visio

---

[17] <u>Id.</u> at ¶¶ 25, 27.

[18] <u>Id.</u> at ¶ 26.

[19] <u>Id.</u> at ¶ 29.

[20] <u>Id.</u> at ¶ 30.

[21] <u>Id.</u> at ¶ 31.

was aware that no value had been paid for the Property in the transaction between the Defendants Lee and UltraCarz.[22]

In December 2015, the Defendant Visio mailed a written notice of default on the Note to the Property, where the Plaintiffs were residing.[23] On January 27, 2016, the Defendant Visio also mailed a written notice of foreclosure to the Property, stating that the Defendant Visio would sell the Property on March 1, 2016.[24] The Plaintiffs first sought counsel with the Atlanta Legal Aid Society, but due to the complexities of the case, had to engage private counsel.[25]

On February 11, 2016, the Plaintiffs filed the first action in this case, seeking a Temporary Restraining Order to enjoin the scheduled foreclosure of the Property. The Temporary Restraining Order was granted by the Court on February 16, 2016, at which time the Plaintiffs filed the second action in this case. The Plaintiffs then filed their Corrected Amended Complaint on May 16, 2016. The Defendant Visio now moves to dismiss with prejudice under Federal Rule of Civil Procedure 12(b)(6).

---

[22]     Id. at ¶ 32.

[23]     Id. at ¶ 37.

[24]     Id. at ¶¶ 38, 41.

[25]     Id. at ¶¶ 42-44.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[26] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[27] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[28] Generally, notice pleading is all that is required for a valid complaint.[29] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[30]

---

[26]    Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[27]    Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[28]    See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[29]    See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).

[30]    See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

## III. Discussion

### A.      Choice of Law

A federal court that is sitting in diversity jurisdiction must apply the choice of law rules of the state in which it sits.[31] Under Georgia law, the meaning and effect of the trust provisions are to be determined by the law of the jurisdiction designated in the instrument itself.[32] In this case, although the instrument designates California law as the applicable law for issues of validity, the instrument makes no mention of the applicable law when it comes to the meaning or effect of the Trust provisions. Under Georgia law, in the absence of a specific designation in the instrument, the law of the jurisdiction with the most significant relationship to the matter at issue shall control.[33] In this case, the Trust was created and executed in California. However, all of the matters at issue in this case ultimately relate to the administration by the Trust of real property that is located in Georgia. Therefore, Georgia has the most significant relationship of any jurisdiction involved, and Georgia law controls.[34]

---

[31]     Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

[32]     O.C.G.A. § 53-12-5.

[33]     Id.

[34]     See Clark v. Baker, 186 Ga. 65, 75-76 (1938) ("It will probably be admitted, and there need be no extended citation of authorities to show, that generally the validity of a trust of realty is to be determined by the law of the situs of the land.").

**B.      Standing**

The Defendant Visio first moves to dismiss all of the Plaintiffs' claims for lack of standing. The Defendant Visio argues that the Plaintiff Adrienne Lee does not have standing because she is not a beneficiary of the Property. The Defendant Visio further argues that even if the Plaintiff Adrienne Lee was the residuary beneficiary of the Property, neither she nor the Plaintiff Ari Lee has standing to assert derivative claims on behalf of the Trust against a third party.

The Defendant Visio's contention that the Plaintiff Adrienne Lee is not a beneficiary of the estate is incorrect. Georgia law defines "beneficiary" as "a person for whose benefit property is held in trust, regardless of the nature of the interest, and includes any beneficiary, whether vested or contingent, born or unborn, ascertained or unascertained."[35] Residual beneficiaries have an interest in all trust property, even if their interest is contingent on remote possibilities or on the discretion of another person.[36] Under the provisions of the Trust, the Plaintiff Ari Lee is listed as the specific beneficiary of the Property, and the Defendant Afton Lee is listed as the secondary beneficiary. But the Plaintiff Adrienne Lee is listed as the residual beneficiary for any "trust property not specifically and *validly* disposed of" within the

---

[35]      O.C.G.A. § 53-12-2.

[36]      Id.; see also Richardson v. Bridges, 260 Ga. 62 (1990).

instrument.[37] Although the Property was specifically devised to the Plaintiff Ari Lee, there remains the possibility that the specific bequest is invalid under the law, or that for some other reason the Property would revert back to the estate. As such, the Plaintiff Adrienne Lee, as the residual beneficiary, has an interest in all property under the Trust, and has standing in the same capacity as any other beneficiary.

The Defendant Visio is also in error when it comes to the ability of beneficiaries to bring derivative claims on behalf of the Trust. Usually, only a trustee has standing to bring an action on behalf of the trust. But when "trust assets are misapplied and can be traced in the hands of persons affected with notice of the misapplication, the trust shall attach to such assets," and a beneficiary may bring a derivative claim on behalf of the trust.[38]

The question at this stage, therefore, is whether sufficient facts have been pleaded to suggest a breach of trust on the part of the Defendant Lee. The Plaintiffs in this case have alleged that the Defendant Lee engaged in self-dealing and waste of Trust assets. The general rule is that "the trustee is under a duty to the beneficiary to

---

[37]     Pls.' Corrected Amended Compl., Ex. C (emphasis added).

[38]     O.C.G.A. § 53-12-301; see also Restatement (Second) of Trusts § 291; Adler v. Hertling, 215 Ga. App. 769, 774 (1994) (applying the "trust pursuit rule," giving beneficiaries the right to pursue trust funds through changes in form); Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 250 (2000).

administer the trust solely in the interest of the beneficiary."[39] The trustee violates this duty not only if he sells trust property to himself, but has an interest in the purchase "of such a substantial nature that it might affect his judgment in making the sale."[40] "Thus, a trustee violates his duty if he sells trust property to a firm of which he is a member or to a corporation in which he has a controlling or substantial interest."[41] This precludes all self-interested transactions absent disclosure to and approval by the beneficiaries, even if the transactions are in good faith and for fair value.[42]

Furthermore, a trustee has a duty to "administer the assets in such manner as to receive their highest value for the benefit of the estate."[43] This means that the trustee cannot transfer trust property in return for no value.[44] Even when a trustee has wide

---

[39]     Fulton Nat. Bank v. Tate, 363 F.2d 562, 570 (5th Cir. 1966) (quoting Restatement (Second) of Trusts § 170).

[40]     Id.

[41]     Restatement (Second) of Trusts § 170 cmt. c (1959).

[42]     Fulton Nat. Bank, 363 F.2d at 572 ("The trustee must avoid being placed in [a conflict of interested] position, and if he cannot avoid it, he may resign, or fully inform the beneficiaries of the conflict...Otherwise, he proceeds at his peril.").

[43]     Northeast Factor & Discount Co. v. Mortgage Investments, Inc. of Ga., 107 Ga. App. 705, 710 (1963).

[44]     Id.

authority under the trust to dispose of it as he sees fit, he must still abide by the express purpose of the trust.[45]

In this case, the Plaintiffs have pleaded that the Defendant Lee transferred the Property to the Defendant UltraCarz for no value at all, as evidenced by the designation of the transfer as a "deed of gift," and the lack of taxes assessed on the transfer.[46] Further, the Plaintiffs have pleaded that the Defendant Lee is in complete control of the Defendant UltraCarz, serving as its President, Secretary, and Treasurer.[47] The Plaintiffs also allege that they received no notice of the proposed transfer of the sale.[48]

Under the facts as pleaded, the transfer of the Property violates both the prohibition against self-dealing and the responsibility to seek the maximum value of Trust property. Although the Trust grants broad powers to the Defendant Lee in his capacity as Trustee, those powers are limited by the fact that the Trust requires Trust property to be used "for the benefit of the Trust beneficiaries..."[49] At the very least,

---

[45]    See Hasty v. Castleberry, 293 Ga. 727, 734 (2013) (stating that the power of a trustee to dispose of trust assets is limited by the express purposes of the trust).

[46]    Pls.' Corrected Amended Compl. ¶¶ 19-20.

[47]    Id. at ¶ 17.

[48]    Id. at ¶ 42.

[49]    Pls.' Corrected Amended Compl., Ex. C.

something must be received in return for Trust assets. Although the Defendant Lee certainly had the power to sell the Property, he cannot simply give it away.

The Defendant Visio argues, however, that the Trust instrument gave the Trustee power to "decide that some or all of the Trust property need not produce income."[50] This may be true, but it is irrelevant here. There is an important difference between, for example, deciding that a trust property does not need to generate rental income, and giving away that trust property for no value. Put another way, if the Property at issue were funds, the Trust instrument would allow the Trustee to hide the funds under the mattress and not earn interest. The Trust would not, however, allow the Trustee to give away the funds for free.

But even if the Trust did allow the Trustee to give away Trust property, the fact remains that the transfer at issue was without question an interested transaction. The Defendant Lee was both the Trustee of the Trust and in complete control of the Defendant UltraCarz. Regardless of his motives, this violates the rule expressed in Fulton Nat. Bank, and constitutes a breach of the Trust.[51]

Because the Defendant Lee, in his capacity as Trustee, dealt in a self-interested transaction and received nothing in exchange for the Property, he breached his

---

[50]    Def.'s Mem. of Law in Supp. of Def. Visio's Mot. to Dismiss, at 8.

[51]    Fulton Nat. Bank, 363 F.2d at 570.

fiduciary duty. As such, the Plaintiffs are entitled to bring a derivative claim on behalf of the Trust against third parties, and the Defendant Visio's motion to dismiss for lack of standing is denied.

### C.   Quiet Title and Declaratory Judgment Claims

The Defendant Visio also argues that the Plaintiffs' claims for quiet title and a declaratory judgment should be dismissed because the Trustee had the authority to dispose of the Property and because the Defendant Visio was a bona fide purchaser for value. As already discussed above, the Defendant's first argument does not hold merit, and the motion to dismiss the quiet title and declaratory judgment claims on the grounds that the Trustee had authority to conduct the transaction is denied.

As to the Defendant Visio's second argument, a bona fide purchaser for value is generally protected against adverse claims when the purchaser had no notice.[52] And a "grantee in a security deed who acts in good faith stands in the attitude of a bona fide purchaser, and is entitled to the same protection."[53] However, "[w]hen trust assets are misapplied and can be traced in the hands of persons affected with notice of the misapplication, the trust will attach to such assets."[54]

---

[52]   See O.C.G.A. § 23-1-20.

[53]   Roop Grocery Co. v. Gentry, 195 Ga. 736, 745 (1943).

[54]   O.C.G.A. § 53-12-301.

Notice can be actual, of course, but constructive notice is also sufficient.[55] "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led."[56] "A purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title" at the time of execution of the instrument.[57]

The Plaintiffs contend that the Defendant Visio had notice because the Quitclaim Deed and the PT-61 transfer tax form, both public documents of record, showed that no value was given to the Trust in exchange for the Property.[58] The Defendant Visio argues, however, that neither the Clerk's stamp nor the PT-61 transfer tax form was within the publicly recorded chain of title on June 11, 2015, the date of the execution of the Security Deed.[59]

The Defendant Visio cannot have it both ways. Considering that the Correction Deed, the Quitclaim Deed, the Note, and the Security Deed were all executed on the same day, it would appear that the Correction Deed and the Quitclaim Deed were also

---

[55]    See Kitchings v. Ameris Bank, 309 Ga. App. 837, 839 (2011).

[56]    Whiten v. Murray, 267 Ga. App. 417, 421 (2004).

[57]    VATACS Group v. HomeSide Lending, 276 Ga. App. 386, 391 (2005).

[58]    Pls.' Corrected Amended Compl. ¶ 32.

[59]    Def.'s Mem. of Law in Supp. of Def. Visio's Mot. to Dismiss, at 13.

absent from the chain of title. Neither was recorded until August of 2015.[60] As such, the last owner in the chain of title at the time of execution would have been listed as the Trust. Considering that the Defendant Lee signed the Note and Security Deed in his capacity as an officer of the Defendant UltraCarz, the Defendant Visio was on notice that the Defendant UltraCarz did not have good title.

But even if the Correction Deed and Quitclaim Deed had somehow been recorded on June 11, 2015, between the time they were executed and the time the Note and Security Deed were executed, then the Defendant Visio would have been on notice of the self-dealing nature of those transactions between the Trustee and the Trust. That in and of itself ought to put a purchaser on notice that there is a cloud on the title.

Furthermore, a simple inquiry into the transaction would have revealed that no value was paid. The Defendant Visio argues that the Quitclaim Deed showed that consideration, albeit nominal, was paid in the form of $10.[61] But while nominal consideration may be sufficient to make a Quitclaim Deed valid, it is also irrelevant. The issue here is notice, not the validity of the execution of the Deed. The fact that the

---

[60]     Pls.' Corrected Amended Compl., Exs. D, F.

[61]     Def.'s Mot. to Dismiss, at 13.

only consideration supposedly paid was $10, less than one percent of the value of the home, ought to raise at least some concern on the part of a bona fide lender.

The Defendant Visio cites R.W. Holdco, Inc. v. SCI/RW Holdco, Inc.[62] for the proposition that a purchaser may still lack notice in the face of numerous suspicious facts. This case, however, is different from the situation in R.W. Holdco. In that case, the unauthorized transaction was between two companies that shared officers, and that do not have the same sort of fiduciary duties as that of a trustee. Furthermore, significant value was paid between the two companies. In this case, however, not only was no value paid, but the transaction was between a Trustee and a company he solely controlled. The law views such transactions, even those in good faith, as presumptively suspect.[63] At the very least, the Defendant Visio should have inquired into the nature of the Quitclaim Deed between the Defendant Lee and the Defendant UltraCarz. Had it done so, it would have discovered that not only was the transaction self-interested, but it was done for no value.

Ultimately, the facts pleaded by the Plaintiffs are more than sufficient to provide a basis for finding that the Defendant Visio had notice and was not a bona fide purchaser for value. If the Correction Deed and Quitclaim Deed were recorded at the

---

[62]     250 Ga. App. 414 (2001).

[63]     Fulton Nat. Bank, 363 F.2d at 570.

time of execution, then the Defendant Visio would have been on notice of the self-interested nature of the transaction, and been on inquiry notice of the lack of value paid. And if the deeds had not been recorded, then the Defendant Visio was on notice that a different party held title. In either case, the Defendant Visio's motion to dismiss the quiet title and declaratory judgment claims on the basis that it was a bona fide purchaser for value is denied.

### D.   Constructive Trust

The Defendant Visio next moves that the Plaintiffs' constructive trust claim should be dismissed. The Defendant Visio relies upon <u>St. Paul Mercury Ins. Co. v. Meeks</u>,[64] which states that a constructive trust is a remedy to prevent unjust enrichment or a windfall; it is not an independent cause of action.[65] The Defendant Visio's reliance on <u>St. Paul Mercury</u>, however, is misplaced. In that case, the defendant had failed to adequately prove the underlying unjust enrichment that is the necessary foundation for imposing a constructive trust.[66] As such, the constructive trust claim also needed to be dismissed. But here, at the motion to dismiss stage where

---

[64]    270 Ga. 136 (1998).

[65]    <u>Id.</u> at 137.

[66]    <u>Id.</u> ("...there was evidence from which the jury could find that Mr. Meeks' debts were not paid with embezzled funds, and hence he was not unjustly enriched as claimed.").

the facts pleaded in the Plaintiffs' complaint are taken as true, there is sufficient evidence to support a plausible claim that the Defendant Lee misappropriated the Property from the Trust.[67] A constructive trust can also be imposed against a third party even if they were not the ones who committed the wrongful acts.[68] Therefore, the constructive trust claim is also appropriately pleaded, and the Defendant Visio's motion to dismiss on these grounds is denied.

### E.   Conversion

The Defendant Visio argues that the Plaintiffs' conversion claims should be dismissed because the Property at issue is real property.[69] Under Georgia law, "[a]n action for conversion and trover will not lie to recover real property."[70] In their Corrected Amended Complaint, the Plaintiffs seek only the return of the Property to the Trust. As such, the Defendant Visio's motion to dismiss the claim of conversion is granted.

---

[67]   See Reinhardt University v. Castleberry, 318 Ga. App. 416, 420 (2012) (upholding a denial of a motion to dismiss constructive trust claim because the plaintiff had pleaded sufficient facts to support a claim for unjust enrichment).

[68]   See Kelly v. Johnston, 258 Ga. 660 (1988) (holding, in an analogous case, that a constructive trust could be imposed upon a widow's bequest of support after her deceased husband had failed to pay his ex-wife the proceeds from the sale of their marital property).

[69]   Def.'s Mot. to Dismiss, at 15.

[70]   Levenson v. Word, 294 Ga. App. 104, 105 n.2 (2008).

### F.      Breach of Legal Duties

The Defendant Visio moves to dismiss the Plaintiffs' claim that the Defendant Visio breached a legal duty to the Plaintiffs because the Plaintiffs failed to specify what legal duty was breached.[71] The Plaintiffs, however, argue that the Defendant Visio had a duty to not accept stolen property, to inquire into the suspicious circumstances of the transfer, and to verify Defendant Lee's authority, among others.[72] The Plaintiffs, however, allege only general duties that the Defendant Visio ought to have done. They fail to specify any duty that the Defendant Visio owed to the Plaintiffs themselves. As such, the Defendant Visio's motion to dismiss the breach of legal duty claim is granted.

### G.      Fair Business Practices Act Claim

The Defendant also moves to dismiss the Plaintiffs' claim that the Defendant Visio violated Georgia's Fair Business Practices Act of 1975 (FBPA).[73] The Plaintiffs claim that the Defendants Lee and UltraCarz engaged in wrongdoing that violated the FBPA, but only say that Visio relied upon these misrepresentations. The Plaintiffs then claim that the Defendant Visio misrepresented itself when it attempted to

---

[71]    Def.'s Mot. to Dismiss, at 16.

[72]    Pls.' Resp. to Def.'s Mot. to Dismiss, at 18.

[73]    See O.C.G.A. §§ 10-1-390 — 10-1-393.

foreclose on the Property because it did not have a security interest in the Property.[74] According to the Plaintiffs, that was in the hands of the Defendant Realty Mogul at the time.[75]

First, the Plaintiffs do not have standing to assert a violation of the FBPA as it relates to the transaction between the Defendants UltraCarz and Visio. They have only suffered a harm from the Defendant Visio's alleged misrepresentation to them. But the Plaintiffs also fail to cite a specific provision of the FBPA that applies here, instead offering broad citations to the Act. Further, the Plaintiffs have failed to show that the alleged misrepresentation was aimed at the larger consuming public and not anything more than a private communication.[76] As such, the Defendant Visio's motion to dismiss the FBPA claim is granted.

### H.    Georgia and Federal RICO Claims

The Defendant Visio moves to dismiss the Plaintiffs' state and federal RICO claims. In order to establish a RICO claim under either state or federal law, it is required that the defendant engage in a pattern of prohibited activity. Under federal

---

[74]    Pls.' Resp. to Def.'s Mot. to Dismiss, at 20.

[75]    Id.

[76]    See Zeeman v. Black, 156 Ga. App. 82, 84 (1980) ("[The FBPA] does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction.").

law, this means the complaint must show at a minimum two acts of related predicate offenses.[77] Under Georgia law, "A pattern requires at least two interrelated predicate offenses."[78] But while two acts are necessary, they may not be sufficient. They must show continuity, or a "series of related predicates that together demonstrate the existence or threat of continued criminal activity."

The Plaintiffs allege that the Defendant Visio committed two separate acts of mail fraud, in violation of 18 U.S.C. § 1341. Mail fraud, however, requires a specific intent that the Plaintiffs have failed to show based on the pleadings in this case.[79] Furthermore, they have failed to sufficiently allege facts that show a likelihood of this being a regular way of doing business on the part of the Defendant Visio. As such, the Plaintiffs have failed to sufficiently plead the predicate offenses required to sustain a federal or state RICO claim, and the Defendant Visio's motion to dismiss on these grounds is granted.

## I.    Attorneys' Fees and Punitive Damages

---

[77]    See Rowe v. Gary, Williams, Parenti, Watson & Gary, P.L.L.C., 2016 WL 3390493, at *13 (N.D. Ga. Mar. 31, 2016).

[78]    Mbigi v. Wells Fargo Home Mortgage, 336 Ga. App. 316, 322 (2016) (quoting Brown v. Freedman, 222 Ga. App. 213, 217 (1996)).

[79]    18 U.S.C. § 1341.

Because not all of the Plaintiffs' underlying claims have been dismissed, the Defendant Visio's motion to dismiss the claims for attorneys' fees and punitive damages is denied regarding the remaining underlying claims.

## IV. Conclusion

For the reasons stated above, the Defendant Visio Financial Services, Inc.'s Motion to Dismiss [Doc. 19] is GRANTED in part and DENIED in part.

SO ORDERED, this 23 day of September, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge